*LESSEE OF E. S. HAINES *v.* THOMAS J. LINDSEY. [88

Deputy sheriff may execute a valid deed for lands sold on execution by himself or principal.

Warrant deputizing an under-sheriff, filed with the clerk, need not be indorsed to make it valid.

THIS case came before the court on a motion for a new trial, made by the defendant; the decision of which was adjourned here from Clermont county. The defendant claimed title under a sale upon judgment and execution, the sheriff's deed being executed by the deputy sheriff. At the trial this deed was rejected, with leave that the defendant move for a new trial, for error in the court in rejecting that deed.

T. MORRIS and T. MOOREHEAD, in support of the motion.

ESTE, against it.

By the COURT:

In the most ancient times of the English common law, the sheriff had his under-sheriff. 6 Com. Dig. 413. Such deputy, when appointed, was vested with authority to perform every ministerial act that the principal sheriff could perform. The power

given the principal sheriff, by our statute, is but in affirmance of the common law, and must be considered as clothing the deputy with the ordinary authority exercised by the deputy sheriffs at the common law; and we think that upon just principles of analogy, the power to make conveyance of lands sold under execution may be legitimately exercised by the deputy.

The writ of *elegit* in England directed the sheriff to hold an inquisition upon the debtor's lands, and according to the finding of that inquisition, set off to the plaintiff, in execution, a certain portion of those lands to be held, at an annual rent, until the debt is paid. The inquisition and sheriff's return upon' the writ are the evidence of the creditor's right to the possession of the lands. It has been adjudged, not only that a deputy sheriff may take an inquisition, and make an *extent* upon *elegit*, but that the bailiff of a liberty may do it, by warrant under him. Croke Cha. 319. In 89] our state, the *order of the court confirming a sale, and the sheriff's deed in conformity with that order, are essential items of proof to sustain the purchaser's title. And there is certainly nothing but what is strictly ministerial, in executing the deed, when the court, acting judicially, have confirmed the sale. Holding an inquisition upon *elegit* bears a much stronger semblance of exercising a judicial authority.

In New York it is settled that an inquisition of damages may be held by the deputy sheriff. 2 Johns. 63. The very question presented in this case has been directly decided in that state, and the validity of a sheriff's deed executed by a deputy sustained. 10 Johns. 223; 7 Cow. 737. The statute of New York authorizes the sheriff, " by writing under his hand and seal, to make some proper person under-sheriff," etc. It directs that " such be recorded in the office of the clerk of the county ; " but it does not define what shall be the powers of the deputy, in the life of the principal. In case of his death, it declares " the deputy shall, in all things, execute the office of sheriff of the same county." Our statute is much stronger than this, for it directs that the warrant appointing the deputy shall authorize him " to perform all and singular the duties appertaining to the office of sheriff, within his respective county." These duties he may perform in the life of the sheriff and as the execution of the deed, after a sale of real estate is one of them, we consider the authority as vested in the deputy by express terms.

In this case an exception is taken that the warrant constituting the deputy has not been filed agreeably to the provision of our statute. It appears to have passed through the proper office before it was placed with the papers in this cause. There is no further evidence that it was filed. In our practice, the ordinary evidence that a paper has been officially filed, is the clerk's indorsement of that fact upon the back of it. But we are not prepared to say that it can not be filed unless thus indorsed, or that no other evidence than the indorsement can be received to establish the tact of filing. It would be especially dangerous to suspend the validity of titles to land upon any practice of a ministerial officer, regulated by no positive law, and not so supported by usage and precedent as to constitute an unbending rule. The exact time when a paper is placed upon file frequently is *very mate- [90 rial to rights arising under it, and, for this reason, the practice of indorsing the fact and the date upon the paper itself meets the entire approbation of the court. Still, had the paper been placed in the office, either strung upon a thread, or laid in a drawer or pigeon-hole, we conceive it would be filed within the terms of the law. The fact of filing it is to be regarded as a matter in pais, seeing there is no law directing it to be made matter of record. In the absence of all testimony with regard to the paper, except that it had been in the clerk's office, before it was used in the cause before us, we feel bound to presume that it was regularly filed. If the deputy deposited his warrant of deputation with the clerk, and that officer omitted to file it, we are not satisfied that the power of the deputy should be deemed void upon that account. 1 Cranch, 161. But it is not necessary now to express an opinion on this point. The verdict must be set aside, and a new trial granted; the costs to abide the event of the suit.

judgments between the parties. Holmes had recovered two judgments against Robinson, in the courts of Franklin county, for an aggregate amount of more than one thousand dollars. Robinson, who, on the record, sued for the use of Reed, had recovered against Holmes, in the Supreme Court of Pickaway county, for a sum exceeding three hundred dollars. Besides the judgment debts, Robinson owed Holmes some other moneys, and there was a suit in chancery pending between them, in which a master had reported a considerable balance due from Robinson to Holmes. There was no assignment of the debt against Holmes, from Robinson to Reed, but it was in proof that Robinson was indebted to Reed, and that Robinson had agreed with the attorney who held his note to Reed, 91] that *the suit against Holmes should be brought for Reed's use, and the amount, when recovered, applied to the payment of Reed's claim. The motion was adjourned here for decision from the county of Pickaway.