**In re SHAFER.**

[Cite as *In re Shafer* (2001), 145 Ohio App.3d 53.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 2001CA7.

Decided July 20, 2001.

*Robert E. Long III,* Miami County Assistant Prosecuting Attorney, for appellee.

*J. Andrew Wannemacher,* Miami County Public Defender, for appellant.

---

FREDERICK N. YOUNG, Judge.

Justin Shafer is appealing the judgment of the Miami County Common Pleas Court, Juvenile Division, adjudging him to be a delinquent child and committing him to the custody of the Department of Youth Services for an indeterminate period of time.

On January 31, 2001, Justin Shafer, a twelve-year-old student, was attending Staunton School in Piqua, Ohio. Staunton School is a school for severely behaviorally handicapped students. Ms. Jackson was one of two educational assistants, commonly known as teacher's aides, for Justin's teacher. During an afternoon class gymnasium session, Justin approached another student with an ink pen while repeatedly stating, "I'm going to kill you." Jackson intervened and told Justin to give her the pen, extending her hand to retrieve the pen. Rather than handing her the pen, Justin spit on her arm. Justin then proceeded to sling the pen at the other student, instead striking Jackson. As the other student proceeded to walk away, Justin bit Jackson on her right wrist. Jackson immediately restrained Justin and placed him in a time-out room.

As a result of this incident, the police were contacted and Justin was charged with being a delinquent child by having committed a felony of the fifth degree by assaulting Jackson or, in the alternative, a first degree misdemeanor assault. Justin had been before the juvenile court for eighteen additional offenses in the previous three and a half years, ranging from domestic violence to criminal damaging. Justin was on probation for assault and menacing charges when this assault occurred. The trial court found Justin guilty of the fifth degree felony of assaulting a "school teacher" on school property and adjudged him to be delinquent. Considering Justin's extensive history of criminal behavior and the inability of the many previous attempts to rehabilitate Justin, he was committed to the Department of Youth Services for an indefinite amount of time, not less than six months and not in excess of his attainment of twenty-one years of age. Justin filed this timely appeal from the juvenile court's judgment. He asserts the following as his sole assignment of error:

"The trial court erred as a matter of law when it expanded the definition of 'teacher' under Ohio Revised Code Section 2903.13 to include 'educational assistant.' "

██ Justin argues that the trial court erred in finding him guilty of a fifth degree felony pursuant to R.C. 2903.13(C)(2)(e) because the statute listed assaults committed against school teachers, administrators, or school bus operators as fifth degree felonies, and the term "school teacher" does not include educational assistants as the trial court concluded. We agree.

██ The Ohio Supreme Court allows courts to interpret statutes, finding that a court's primary concern must be to determine the legislative intent behind the statute, which is done by focusing on the language in the statute and the legislative purpose. *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 346, 626 N.E.2d 939, 941. However, a trial court may not "ignore the plain and unambiguous language of a statute under the guise of either statutory interpretation or liberal construction; * * * the courts must give effect to the words utilized." *Id.* at 347, 626 N.E.2d at 942. The words in the statute must be considered in their usual, normal, or customary meaning. *Id.,* citing *State v. S.R.* (1992), 63 Ohio St.3d 590, 595, 589 N.E.2d 1319, 1323.

R.C. 2903.13(C)(2) provides:

"If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:

"* * *

"(e) The victim of the offense is a school teacher or administrator or a school bus operator, and the offense occurs in a school, on school premises, in a school building, on a school bus, or while the victim is outside of school premises or a school bus and is engaged in duties or official responsibilities associated with the victim's employment or position as a school teacher or administrator or a school bus operator, including, but not limited to, driving, accompanying, or chaperoning students at or on class or field trips, athletic events, or other school extracurricular activities or functions outside of school premises."

The statute continues on to define a "school teacher or administrator" for a public school:

"A person who is employed in the public schools of the state under a contract described in section 3319.08 of the Revised Code in a position in which the person is required to have a certificate issued pursuant to sections 3319.22 to 3319.311 of the Revised Code." R.C. 2903.13(C)(5)(f)(i).

R.C. 3319.088 defines an "educational assistant" and grants him or her a wide range of authority to assist a teacher, including assisting with instructional tasks, supervising children, and controlling and disciplining students.

At the hearing in this case, Jackson testified that she taught students on various subjects according to the teacher's agenda. Additionally, she testified

that she assists students with their school work, and when a child goes into a crisis situation, she takes the student into the hall and attempts to calm him or her down. Further, she is authorized to discipline the students, including restraining them and placing them in a time-out room if they become unruly. Jackson estimated that she spends seven hours a school day disciplining students.

In its decision, the trial court determined that "school teacher" under R.C. 2903.13(C)(2)(e) included an educational assistant. The trial court reasoned that those individuals listed in the statute were commonly linked by their duty to discipline students, distinguishing them from janitors, secretaries, and cafeteria workers. The trial court determined that those individuals who discipline students are at greater risk of assault from angry students and parents and that the legislature recognized this fact, causing it to draft R.C. 2903.13(C)(2)(e) to protect these individuals. Since one of an educational assistant's primary duties is to maintain control and discipline of a class equivalent to a teacher, the trial court determined that the legislature intended the statute to protect educational assistants as well as classroom teachers. Thus, the trial court held that "school teachers" as used in R.C. 2903.13(C)(2)(e) incorporates educational assistants.

We find the reasoning of the trial court to be quite logical and compelling. As the instant case highlights, an educational assistant such as Jackson not only teaches students but may often primarily be a disciplinarian. As the educational assistants in Justin's school for severely behaviorally handicapped students are often called upon to attempt to calm students having a crisis and restrain those students, they are inevitably at greater risk for assault. We agree with the trial court that the legislature likely did not purposefully intend to exclude educational assistants such as Jackson. Likewise, it appears unreasonable to find that if a student assaults his teacher, it is a felony, but if he assaults his teacher's educational assistant, it is only a misdemeanor. Thus, we sympathize with the trial court's decision; however, we must disagree.

Although it may seem inconsistent to refuse an educational assistant who is disciplining students the same protection offered to a classroom teacher, we cannot ignore the plain, unambiguous language of R.C. 2903.13. The assault statute defines its use of the term "school teacher" for a public school as "[a] person who is employed * * * under a contract described in section 3319.08 of the Revised Code in *a position in which the person is required to have a certificate issued pursuant to sections 3319.22 to 3319.311 of the Revised Code.*" (Emphasis added.) R.C. 2903.13(C)(5)(f)(i). An educational assistant receives his or her certificate pursuant to R.C. 3319.088, which explicitly defines the position as duties that do not require one to have a "license issued pursuant to sections 3319.22 to 3319.30 of the Revised Code." Thus, since the assault statute limits the term "school teacher" to encompassing only positions where a certificate

issued pursuant to R.C. 3319.22 to R.C. 3319.311 is required and an educational assistant's duties do not require such a certificate, the statute excludes educational assistants from being determined to be "school teachers" as the term is used in the statute. Although we agree with the state of Ohio that educational assistants' duty of discipline places them at greater risk for assault and their exclusion may be merely an oversight by the legislature, we are bound by the words used in the statute. Since the assault statute limits the term "school teacher" to those with a teaching certificate, assaulting an educational assistant on school grounds does not amount to a fifth degree felony as it would if a "school teacher" were assaulted. Therefore, the assignment of error is sustained.

As stated above, we believe that educational assistants logically and rationally should receive the additional protection that R.C. 2903.13(C)(2)(e) gives "school teachers." Educational assistants by virtue of the fact that they teach, supervise, and discipline students are placed in the same risk of assault as school teachers, administrators, or school bus operators. Therefore to protect these individuals but not educational assistants seems illogical. Thus, we would recommend to the legislature that if it intended to protect educational assistants that it express it in the statute.

■ Additionally, we would like to clarify that while we may not be able to affirm the trial court's finding of delinquency due to the commission of a fifth degree felony assault, Justin may still be found to be a delinquent child by having committed a first degree misdemeanor assault. The trial court properly determined that Justin bit Jackson and caused her physical harm when she prevented him from injuring another student. Justin's biting of Jackson certainly amounts to an assault that pursuant to R.C. 2903.13(C) is a misdemeanor of the first degree. Thus, the trial court would be justified upon remand to find Justin delinquent by having committed a first degree misdemeanor assault.

The judgment of the trial court finding Justin to be a delinquent child by having committed a fifth degree felony is reversed, and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

WOLFF, P.J., and GRADY, J., concur.