**GILBERT et al., Appellants,**

v.

**FIFTH THIRD BANCORP et al., Appellees.**

[Cite as *Gilbert v. Fifth Third Bancorp*, 159 Ohio App.3d 56, 2004-Ohio-5829.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20447.

Decided Oct. 29, 2004.

Ronald J. Maurer, for appellants.

Patrick Fischer and Douglas L. Hensley, for appellees.

Wolff, Judge.

{¶ 1} Pamela and Randy Gilbert appeal from a judgment of the Montgomery County Court of Common Pleas, which found in favor of Fifth Third Mortgage Company ("Fifth Third") on its claim for statutory damages, pursuant to R.C. 5301.36(B), based on Fifth Third's alleged failure to record a satisfaction of residential mortgage in the Montgomery County Recorder's Office within the 90–day statutory period.

{¶ 2} The record reveals the following facts.

{¶ 3} On September 8, 1997, the Gilberts obtained a residential mortgage loan from CitFed Mortgage Corporation of America in the amount of $104,500. The mortgage was recorded in the Montgomery County Recorder's Office on September 12, 1997. Fifth Third subsequently assumed the mortgage. The Gilberts made all of their required mortgage payments to Fifth Third, including those in 2002. On August 8, 2002, the Gilberts paid off their mortgage in full. At that time, Fifth Third was obligated to record the satisfaction of the mortgage with the Montgomery County Recorder's Office within 90 days, pursuant to R.C. 5301.36.

{¶ 4} Pursuant to a processing agreement, Security Connections, Inc. ("SCI") was authorized by Fifth Third to process mortgage satisfactions. On October 15, 2002, SCI mailed the Gilberts' mortgage satisfaction to the Montgomery County Recorder's Office. The satisfaction was time-stamped by the recorder's office on November 21, 2002, i.e., 105 days after the Gilberts had paid off their mortgage. SCI subsequently received a time-stamped copy of the satisfaction. Neither Fifth Third nor SCI had followed-up to check on the progress of the satisfaction prior to its return to SCI.

{¶ 5} On February 20, 2003, the Gilberts initiated a class action lawsuit on behalf of themselves and other similarly situated persons who had residential mortgages with Fifth Third, who were entitled to a release or satisfaction of mortgage from the company, and whose satisfaction was not recorded within 90 days of the mortgage being paid in full. The court determined that the viability of the Gilberts' claim was a threshold issue that needed to be resolved before discovery would proceed on the class action claims. The parties subsequently filed cross-motions for summary judgment, which were denied. In ruling on the motions for summary judgment, the court concluded that a mortgagee records a mortgage satisfaction in a timely manner when it delivers the satisfaction to the recorder for record within 90 days. The court found, however, that there were genuine issues of material fact as to whether the Gilberts' satisfaction had been presented to the Montgomery County Recorder's Office within that time period.

{¶ 6} On February 27, 2004, a bench trial was held on the timing of the county recorder's office's receipt of the Gilberts' mortgage satisfaction. The court found in favor of Fifth Third, concluding that it had mailed the mortgage satisfaction to the recorder's office in a timely manner and, due to the presumption of timely mail delivery, the satisfaction had been received prior to the expiration of the 90–day statutory period. The court thus concluded that the requirements of R.C. 5301.36 had been met.

{¶ 7} The Gilberts raise two assignments of error on appeal.

{¶ 8} "I.   The trial court erred as a matter of law and abused its discretion by failing to find for the plaintiffs."

{¶ 9} In their first assignment of error, the Gilberts claim that the trial court incorrectly concluded that a mortgage satisfaction is "recorded," for purposes of R.C. 5301.36(B), when it arrives at the county recorder's office. They assert that the Ohio Revised Code distinguishes between presentation to the county recorder's office and recording and that R.C. 5301.36(B) requires that the satisfaction be recorded within 90 days. Fifth Third responds that "[u]nder well-settled black letter Ohio law, an instrument is deemed to be 'recorded' when it is delivered to the Recorder along with the appropriate recording fee, regardless of when it is actually entered in the official books and records by the Recorder." It asserts that it should not be penalized for the failure of the recorder's office to enter the satisfaction in the official books and records in a timely fashion.

{¶ 10} The county recorder has a duty to record in the proper record all deeds, mortgages, and other instruments of writing "that are required or authorized by the Revised Code to be recorded and that are presented to the recorder for that purpose." R.C. 317.13.   Upon presentation to the county recorder's office, the county recorder must indorse on the deed or other written instrument (1) the date, (2) the precise time of the instrument's presentation, and (3) a file number. R.C. 317.12 and 317.13.   The file numbering must be consecutive and in the order that the instrument had been received for record (with the exception that financing statements are separately filed and have separate file numbers). R.C. 317.12.   The recorder must "record the instruments in regular succession, according to the priority of presentation." R.C. 317.13.   When the deed or instrument is recorded, the county recorder is required to indorse on it the time when it is recorded, as well as the number or letter and page of the book in which it is recorded. R.C. 317.12.

{¶ 11} R.C. 5301.36(B) requires that "[w]ithin ninety days from the date of the satisfaction of a residential mortgage, the mortgagee shall record the fact of the satisfaction in the appropriate county recorder's office and pay any fees required for the recording." Under R.C. 5301.36(C), the mortgagor may recover $250 from the mortgagee if the mortgagee fails to comply with R.C. 5301.36(B).

{¶ 12} The Gilberts assert that R.C. 5301.36 is clear and unambiguous and that it expressly requires the satisfaction to be *recorded* within a 90–day period. Quoting *Green v. Garrington* (1866), 16 Ohio St. 548, 550, 1866 WL 18, they contend that " '[o]rdinarily, the recording of an instrument means the copying of it into the public records kept for the purpose, by or under the direction or authority of the proper public officer.' " Moreover, they note that the Ohio General Assembly has distinguished between "presentation" to the recorder and the "recording" of the instrument. See R.C. 317.13(A) and (B); see, also, R.C. 5301.23 ("properly executed mortgages shall be recorded * * * and shall take effect at the time they are delivered to the recorder for record").

{¶ 13} The Supreme Court has instructed that "[i]n construing a statute, a court's paramount concern is the legislative intent in enacting the statute." *Morgan v. Ohio Adult Parole Auth.* (1994), 68 Ohio St.3d 344, 346, 626 N.E.2d 939. In determining legislative intent, courts must begin with the statutory language and the legislature's purpose. Id., citing *State v. S.R.* (1992), 63 Ohio St.3d 590, 594–595, 589 N.E.2d 1319. Words used in a statute must be given their usual, normal, or customary meaning. *Morgan,* 68 Ohio St.3d at 346, 626 N.E.2d 939. The court may not "ignore the plain and unambiguous language of a statute under the guise of either statutory interpretation or liberal construction." Id. at 347, 626 N.E.2d 939; *In re Shafer* (2001), 145 Ohio App.3d 53, 55, 761 N.E.2d 1096.

{¶ 14} Contrary to the Gilberts' assertions, the statutory language of R.C. 5301.36(B) is not clear on its face. As noted by Fifth Third, R.C. 317.12 and 317.13 place the duty to record "a deed or other instrument of writing" on the county recorder. A plain reading of R.C. 5301.36(B), however, seemingly places the duty upon the *mortgagee* to record a residential mortgage satisfaction. Although a mortgagee may *present* a mortgage satisfaction to the county recorder for record, we find no authority that permits a mortgagee to physically enter the satisfaction into the public records. Accordingly, it is apparent that R.C. 5301.36(B) cannot be interpreted literally.

{¶ 15} We are left then with two possible interpretations of R.C. 5301.36(B): (1) the mortgagee must ensure that the appropriate county recorder's office records the residential mortgage satisfaction within 90 days (as asserted by the Gilberts), or (2) the mortgagee must properly present the residential mortgage satisfaction to the appropriate county recorder's office for record within 90 days (as asserted by Fifth Third).

{¶ 16} In our judgment, a mortgagee "records" the satisfaction of a residential mortgage for purposes of R.C. 5301.36(B) when it has taken all necessary steps for the residential mortgage satisfaction to be recorded by the county recorder's office and has presented the satisfaction to the recorder's office

for that purpose. This conclusion comports with the long-established precedent that a party should not be penalized for the ministerial delays of the relevant public officer, in this case the county recorder. See *King v. Kenny* (1829), 4 Ohio 79, 83, 1829 WL 7 (when instruments have been properly presented to the recorder's officer for record but were not recorded due to ministerial nonfeasance, the instrument is treated as though it had been recorded at the time it was properly presented); *King v. Penn* (1885), 43 Ohio St. 57, 1 N.E. 84 (holding that when the appellant had timely delivered his appeal to the court but the clerk had failed to formally file and indorse it, the appeal was "filed" when it was delivered to the court clerk); see, also, *Young v. State Personnel Dept. Bd. of Review* (1967), 9 Ohio App.2d 25, 38 O.O.2d 36, 222 N.E.2d 789 (applying a presumption of timely delivery and deeming the notice of appeal timely when it was untimely file-stamped after the notice was found "under some books").

{¶ 17} Moreover, the Gilberts' interpretation of R.C. 5301.36(B) would, in many instances, place an unsustainable burden on a mortgagee. Although Fifth Third or SCI arguably could have contacted the Montgomery County Recorder's Office to inquire about the delay in receiving a time-stamped satisfaction, Fifth Third had no authority to rectify any delay that may have occurred in the recorder's office. The recorder's office is required by statute to record instruments in regular succession, according to the priority of presentation. R.C. 317.12 and 317.13; see, also, Ohio Atty.Gen.Op. No. 99–014. We find no statutory authority that would have permitted the county recorder's office to rush the recording of a residential mortgage satisfaction so that the instrument would be recorded within the 90–day deadline.

{¶ 18} Finally, contrary to the Gilberts' assertion, their interpretation of R.C. 5301.36(B) is neither required nor supported by the Supreme Court's recent decision in *In re Consol. Mortgage Satisfaction Cases,* 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556. In that case, the Supreme Court determined whether the trial court had properly certified a class action brought by mortgagors against their respective lenders for failing to record the satisfaction of their residential mortgages within 90 days, as required by R.C. 3501.36(B). The court of appeals had concluded that the certification was improper, because each mortgagor would have been required to establish the fact and date of the satisfaction of the debt and the date upon which the satisfaction had been recorded. In reversing the court of appeals, the Supreme Court addressed only whether the mortgagors had satisfied the class-certification requirement set forth in Civ.R. 23(B)(3), i.e., that common questions of law or fact predominate over the questions affecting individual members. The Supreme Court expressly stated that it took "no stand on the merits of the allegations by [the mortgagors]." In

other words, *In re Consol. Mortgage Satisfaction Cases* did not address whether R.C. 5301.36(B) had been satisfied, and it is inapposite to the present case.

{¶ 19} The first assignment of error is overruled.

{¶ 20} "The trial court erred as a matter of law and abused its discretion by finding for the defendant when there was no proof of proper address or postage and the presumption of proper mail delivery could not be applied."

{¶ 21} In their second assignment of error, the Gilberts claim that the trial court erred in applying the presumption of timely mail delivery. They argue that the court confused the presumption of receipt of mail with the presumption of timely delivery and, therefore, the court applied the wrong standard to this case. The Gilberts assert that Fifth Third failed to present evidence that the envelope containing the mortgage satisfaction was properly addressed to the Montgomery County Recorder's Office and was affixed with proper postage. Fifth Third responds that the trial court applied the appropriate standard. It argues that the Gilberts have improperly relied upon cases dealing with the presumption of receipt of mail when there is no dispute as to whether the mail had been received.

{¶ 22} Fifth Third contends that even if the trial court should not have applied the presumption of timely delivery, the Gilberts failed to meet their burden of proving that the satisfaction was not delivered to the county recorder's office until after the expiration of the 90–day statutory period. We disagree. The parties have stipulated that the Gilbert's mortgage was paid in full on August 8, 2002. Thus, the statutory deadline was November 6, 2002. The parties have further stipulated that the satisfaction was not recorded by the Montgomery County Recorder's Office until November 21, 2002. In our view, this date of recording is prima facie evidence that satisfaction was not properly presented in a timely manner. Absent the presumption of timely delivery, the Gilberts could prevail on their claim.

{¶ 23} Because the presumption of timely delivery is necessary for Fifth Third to refute that evidence, the critical issue is whether the trial court properly applied the presumption of timely delivery. In *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 12 O.O.3d 198, 389 N.E.2d 1113, the Supreme Court of Ohio considered whether a notice of appeal had been timely filed when the notice had been received by the administrative agency but the record did not reveal *when* it had been received. The court applied a presumption of timely delivery, reasoning: "Here, a copy of the notice of appeal was sent by certified mail, to a destination within the same city, five days prior to the expiration of the statutory time limit. Appellant having presented no evidence of

late delivery, a presumption of timely delivery controls * * *." Id. at 205, 12 O.O.3d 198, 389 N.E.2d 1113. As we recently explained:

{¶ 24} "In reaching its conclusion, the *Dudukovich* court adopted the reasoning of *Young v. Bd. of Review* (1967), 9 Ohio App.2d 25 [38 O.O.2d 36], 222 N.E.2d 789. In that case, the appellant mailed a notice of appeal six days before the filing deadline. Nine days later, a court clerk file-stamped the notice of appeal after discovering it 'under some books in her office.' Id. at 26 [38 O.O.2d 36], 222 N.E.2d 789. On review, the Third District Court of Appeals applied a presumption of timely delivery, explaining:

{¶ 25} " 'The addressee of mail matter is presumed to have received it as soon as it could have been transmitted to him in the ordinary or regular course of the mails, or as it is otherwise expressed, in due course of the mails. The presumption is not easily overcome, and is reinforced where the envelope in question was actually received in the mails. * * *

{¶ 26} " 'Receipt at a particular time cannot ordinarily be presumed unless there is proof of the course of the mails, or the probable time necessary for transmission, as well as of the date of mailing, except where such facts may be judicially noticed * * *.'

{¶ 27} " 'We will take judicial notice that in the ordinary course of the mails first class mail properly addressed to the Clerk of Courts of Union County, Marysville, Ohio, and mailed postage prepaid at Columbus, Ohio, a distance of approximately 33 miles, will be received by the addressee at Marysville in less than six days from the date of mailing; in other words, that the notice of appeal contained in such an envelope, mailed in Columbus, Ohio, on June 15, 1966, will be presumed to have been received by the Clerk of Courts of Union County on or before June 21, 1966. On this presumption, there being no evidence to rebut same, we conclude that the notice of appeal herein was timely filed.' Id. at 27–28 [38 O.O.2d 36], 222 N.E.2d 789 (citation omitted)." *Van Leur v. Ohio Dept. of Commerce*, Montgomery App. No. 20180, 2004-Ohio-3777, 2004 WL 1587141 (explaining *Dudukovich* and *Young*).

{¶ 28} The Gilberts argue that in *Blackburn Sec., Inc. v. Ohio Dept. of Commerce* (May 24, 1993), Montgomery App. No. 13660, 1993 WL 179253, a case involving the presumption of due receipt, we established that a party also must prove that the letter was properly addressed and had sufficient postage in order to avail itself of the presumption. In *Blackburn*, a security agency asserted that it had timely requested an administrative hearing on a decision by the Licensing Division of the Department of Commerce to revoke the agency's license to operate a security service and private investigation business. The parties agreed that, pursuant to R.C. 119.07, requests for a hearing must have been received by the agency within 30 days of the agency's mailing of the notice to Blackburn.

Blackburn's office manager presented evidence that he had drafted a letter requesting a hearing, signed the letter, stamped it with a postal machine, and personally mailed it. The agency allegedly never received the letter.

{¶ 29} On review, we stated that "a presumption of due receipt of a letter or other communication sent through the mails arises upon proof that the letter or other communication (1) was properly addressed, (2) had sufficient postage, and (3) was properly deposited in the mails." Id., citing *Simpson v. Jefferson Std. Life Ins. Co.*, (1972), 465 F.2d 1320, 1323. Although we concluded that Blackburn had satisfied the second and third elements, we noted that the address line of the letter indicated an address that was incorrect in two respects—it had an incorrect zip code and it did not indicate that it was being sent to the Division of Licensing. Thus, we concluded, "While it is conceivable that the letter could have been delivered despite these minor flaws in the address, a court cannot presume that it was. To obtain the benefits of the presumption, a party must establish that the letter was properly addressed; it is not sufficient to prove that the address was close to being correct."

{¶ 30} *Hitz v. Ohio Fuel Gas Co.* (1932), 43 Ohio App. 484, 183 N.E. 768, upon which the Gilberts have also relied, likewise concerns mail that allegedly had not been received. In *Hitz*, the sole question before the court was whether a rental payment had been mailed on time. The court noted that the lessee's office had established systemized methods to ensure that no errors would occur in book-keeping, adding machine totals, the drawing of checks in correct amounts and at the required time, the dating, addressing, and enclosing of these checks in window envelopes in advance of the time of mailing, placing the enclosed checks in files, and mailing them on the tenth day prior to date of rental-due day. Although the plaintiffs had asserted that they had not received the rental check, the court concluded that the lessee's evidence established that it had been mailed. It reasoned: "From the proven facts in this case it may be inferred that the check was prepared, addressed, inclosed, stamped, and filed for mailing at a definite time." Id. at 490, 183 N.E. 768. The court specifically stated that it was not called upon to address whether the check had been received by a certain date.

{¶ 31} We do not find *Blackburn* and *Hitz* to be in conflict with *Dudukovich* and *Young*. As noted by Fifth Third, our decision in *Blackburn* addressed the situation in which there was no evidence that the correspondence had been received. The *Simpson* decision, on which we had relied, specifically stated that proof of proper address, postage, and mailing was required "to establish mailing in order to benefit from the presumption that *a letter has been received*." (Emphasis added.) *Simpson*, 465 F.2d at 1323. Likewise, the *Hitz* court relied upon evidence of the company's systems of mailing solely to establish that the payments had been mailed when the payments had not been received.

{¶ 32} Although the presumption of timely delivery requires a properly addressed and prepaid mailing, we see no reason why those elements cannot be inferred when the letter had, in fact, been received by the intended addressee. See *Dudukovich*, 58 Ohio St.2d at 205, 12 O.O.3d 198, 389 N.E.2d 1113 (applying the presumption of timely delivery in the absence of evidence of late delivery). We acknowledge that the lack of proper postage or an error in the address may cause a delay in the delivery. Thus, even when the correspondence has been received, courts have properly refused to invoke the presumption where there is evidence of improper postage or an error in the address. See *Robinson v. Dept. of Liquor Control*, Portage App. No. 98–P–0118, 2000 WL 816252 ("There cannot be a presumption of timely delivery when the article was mailed to the wrong address"); see, also, *Ross v. Tracy* (Feb. 1, 1999), Stark App. No. 98–CA–00103, 1999 WL 100002 (the presumption of timely delivery was not available when the notice of appeal was sent to the wrong address and was not in the Tax Commissioner's files). However, in the absence of such evidence and when delivery has occurred, we see no reason why the presumption should not be applied.

{¶ 33} In the present case, Fifth Third has presented sufficient evidence that it was entitled to a presumption of timely delivery. Kathleen Maughan, president of SCI, testified in her deposition (which was entered into evidence at trial) that the Gilberts' mortgage satisfaction was placed in the mails. Maughan indicated that once the satisfaction had been printed, properly signed, and notarized, the Gilberts' satisfaction went to the Shipping Department. SCI's computer tracking system noted the date of printing and of shipping. Maughan explained that the shipping date is the date that the postal service picked up the satisfaction and that the actual shipping date is manually entered into the tracking system. According to SCI's tracking system, the Gilberts' satisfaction was picked up by the postal service on October 15, 2002, approximately three weeks prior to the 90–day statutory deadline. Ken Vander Kolk, an operations support specialist with the United States Postal Service, testified at trial that the standard delivery time for mail that was placed in the mail in Idaho City, Idaho, and traveling to Dayton, Ohio, is three days. He thus testified that mail sent from Idaho City on October 15, 2002, would typically have been delivered on Friday, October 18, 2002. Vander Kolk stated that in 2002, the postal service met the three-day service standard 89% of the time. It is undisputed that the satisfaction was received by the Montgomery County Recorder's Office.

{¶ 34} Based on this evidence and in the absence of any evidence that timely delivery would likely not have occurred due to improper postage or address, the trial court properly concluded that the presumption was applicable and had not been overcome. As stated by the trial court, "the great probability is that the

mortgage satisfaction was received by the Montgomery County Recorder's office within three days of October 15, 2003 [sic]—obviously well before the expiration of the 90 day statutory recording period set forth by O.R.C. § 5301.36(B)." Although we make no judgment as to why the recorder's office did not record the Gilberts' mortgage satisfaction until November 21, 2002, we find no basis to conclude, based on the record, that the satisfaction would have taken more than three weeks to be delivered to that office.

{¶ 35} The second assignment of error is overruled.

{¶ 36} The judgment of the trial court is affirmed.

Judgment affirmed.

FAIN, P.J., and FREDERICK N. YOUNG, J., concur.