OPINION
{¶ 1} In May 2006, Rosa H. Birjandi appealed from a Judgment Entry and Final Decree of Divorce issued in the Greene County Court of Common Pleas, Domestic Relations Division. In one of her assignments of error, she alleged that the trial court lacked jurisdiction over the divorce proceedings because her husband, the plaintiff, Saeid Mir, had moved out of *Page 2 
state before his complaint was filed. We could not determine from the record whether the complaint had been delivered to the court before Mir moved out of state. Mir asserted that his complaint had been delivered to the court before he moved but that, for reasons related to the court's internal procedures, it was filed several days later. Because of the jurisdictional issue involved, on June 29, 2007, we remanded the case to the trial court for a factual determination of whether the complaint for divorce had been delivered to the court before Mir moved out of state, at which point the court would have lacked jurisdiction to hear the case. We retained jurisdiction over the other assignments of error. See Mir v. Birjandi, Greene App. Nos. 2006 CA63, 71, 72,2007-Ohio-3444 ("Mir I ").
 {¶ 2} On July 18, 2007, the trial court issued a Decision and Findings addressed to our questions about the court's procedures and the time that had allegedly elapsed between the delivery of the complaint and the file-stamping at the clerk's office. We now proceed to review the jurisdictional issue and the remaining assignments of error, beginning with a brief recitation of the relevant facts.
 {¶ 3} Birjandi and Mir were married in Iran in October 1982. In the early years of the marriage, they emigrated to the United States. Mir had been an agricultural engineer in Iran but had trouble finding employment in that field in the Unites States due to his poor English skills. He went to work as a taxi driver and tow truck driver to support the family. Meanwhile, Birjandi enrolled in school. After ten years of study, she earned a Ph.D. in engineering. In 2003, she went to work for the Air Force Institute of Technology ("AFIT"), which brought the family to Greene County. Although Mir continued to work, Birjandi earned substantially more income. *Page 3 
 {¶ 4} In September 2004, Mir filed for divorce in Greene County. By this time, the parties' only child was emancipated. While the Greene County divorce case was pending, Birjandi obtained a divorce in an Iranian court. In March 2005, Birjandi filed a motion to dismiss the Greene County action based on the court's alleged lack of jurisdiction and the existence of the Iranian decree. The court overruled the motion. Birjandi appealed from the trial court's decision on jurisdiction, but we held that the trial court's ruling was not a final appealable order.
 {¶ 5} The trial court conducted a hearing on the complaint for divorce on January 27 and February 13, 2006. Thereafter, the court concluded that the Iranian divorce decree was not binding upon the court. We affirmed this conclusion in Mir I. The court also granted the divorce, divided the parties' property, and ordered Birjandi to pay spousal support for ten years.
 {¶ 6} Birjandi raises nine assignments of error in her brief. We overruled the second assignment of error related to the effect of the Iranian decree in our previous opinion. We now turn to the remaining assignments of error, beginning with further consideration of the court's jurisdiction.
 {¶ 7} Birjandi's first assignment of error is as follows.
 {¶ 8} I. "THE COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION TO DISMISS AND RULING THAT IT HAD JURISDICTION OVER THE CASE"
 {¶ 9} As we stated previously, the parties married in 1982 and moved to Ohio in October 2003. It is undisputed that, on September 8, 2004, Mir left the marital residence and moved to Maryland with no intention of returning. Mir's complaint for divorce was file-stamped by the Greene County Clerk's Office on September 13, 2004. Based on these facts, *Page 4 
Birjandi claims that Mir was not a resident of Greene County for the "six months immediately before" the filing of his complaint, as required by R.C. 3105.03.
 {¶ 10} Mir claims that extenuating circumstances warrant treating the complaint as if it was had been filed before he moved to Maryland. He claims that, because his complaint requested restraining orders, he was required by the court to submit the complaint and proposed restraining orders to the judge's chambers for review and signature before filing. He notes that the clerk's office and the judge's chambers are in different locations. Mir claims that his complaint and proposed restraining orders were submitted for the judge's review before he moved to Maryland. On these facts, he claims that he should be deemed to have filed the complaint before he moved and that the court thus had jurisdiction over the case.
 {¶ 11} The trial court focused on Birjandi's residence in finding that it had jurisdiction over the case. In our previous opinion, we found that the trial court had erred in this respect because, pursuant to R.C.3105.02, the plaintiffs residence, not the defendant's, was critical. But we further stated:
 {¶ 12} "The trial court's error is not the end of the inquiry, however. Mir alleges in his brief that his complaint and proposed restraining orders were delivered for the judge's signature on the proposed orders several days before they were file-stamped. If the trial court required the complaint, as well as the proposed restraining orders, to be delivered to the court for review of the proposed orders by the court before the complaint could be filed, Mir is entitled to have the date of delivery treated as the date of filing. `This conclusion comports with the long-established precedent that a party should not be penalized for the ministerial delays of the relevant public officer * * *.'" Mir I at ¶ 8. (Citations omitted.) *Page 5 
 {¶ 13} Furthermore, we observed that the record did not demonstrate the date upon which Mir's complaint was delivered to the court. We remanded to the trial court for a factual determination of this critical date.
 {¶ 14} In its decision in response to our remand, the trial court acknowledged that it was "the preferred and common practice" of the court to receive requests for temporary restraining orders which accompany a complaint for divorce for review by the judge before filing. The court explained:
 {¶ 15} "The main reason for filing the documents together is to allow them to be served upon the opposing party at the same time by the chosen method of service thus saving the time and expense of processing and serving the documents twice. In addition the service of a complaint upon an opposing party without a temporary restraining order would potentially leave the door open for the party who was served with the complaint to clean out bank accounts or dispose of other assets of the parties which would not be the subject of a restraining order."
 {¶ 16} The court acknowledged that parties are not required to file restraining orders at the same time as a divorce complaint but observed that the "vast majority of divorce complaints" are accompanied by a request for a temporary restraining order.
 {¶ 17} The court further observed that the complaint, which was mailed on September 3, 2004, "most likely" arrived at the court on Tuesday, September 7, the day after Labor Day. Upon review of the judge's personal calendar, the court noted that the judge was in Columbus for the Ohio Judicial Conference beginning the afternoon of Tuesday, September 7th, and that he did not return to the office until September 13, which "would have been the first time the [judge] would have been able to review and sign the temporary restraining order" and deliver it *Page 6 
to the clerk. September 13th is, in fact, the day that the complaint and restraining order were file-stamped.
 {¶ 18} We previously held that, if the trial court required the complaint, as well as the proposed restraining orders, to be delivered to the court for review of the proposed orders by the court before the complaint could be filed, Mir is entitled to have the date of delivery treated as the date of filing.[1] Although the court's decision did not state that it "required" the documents to be delivered together prior to filing, it was the "common and standard practice." Moreover, the judge opined that "an attorney that does not request a temporary restraining order in a case that has any assets or potential assets may well be subject to a malpractice claim should those assets be disposed of before the Court can make a proper adjudication of the merits of the case. Thus the reason for the practice of obtaining the restraining orders at the time of the filing of the Complaint so they can be served together." *Page 7 
 {¶ 19} Based on the trial court's factual findings on remand, we will treat the complaint as if it were filed in the trial court on September 7, 2004, the day it arrived at the judge's office, notwithstanding the fact that it was file-stamped almost a week later. Using this date, we conclude that Mir did reside in Greene County for the "six months immediately before" the filing of his complaint, as required by R.C.3105.03. As such, the trial court had jurisdiction over the parties' divorce proceedings.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} III. "THE TRIAL COURT ERRED IN ITS RULING REGARDING SPOUSAL SUPPORT"
 {¶ 22} Birjandi claims that the court erred in awarding any spousal support to Mir and that, even if spousal support was warranted, the duration and amount of the spousal support award were unjustified.
 {¶ 23} The trial court awarded Mir spousal support in the amount of $2,003 per month for ten years. It arrived at this amount by imputing income to Birjandi in the amount of $118,000 to $120,000 per year, which was the salary she earned at the job she quit during the course of the trial. The court concluded that she had "voluntarily resigned" from this job. The court found that Mir's annual income was $18,200, which he earned by delivering pizza. The court retained jurisdiction over the issue of spousal support.
 {¶ 24} Birjandi asserts that, if the trial court had properly weighed the evidence presented, she would not have been ordered to pay support or would have been ordered to pay less. She contended that she had only earned $110,000 in the previous year and that Mir should have been imputed income of $40,000, an amount he had earned in some past years. She also *Page 8 
claimed that her medical condition should have been taken into account.
 {¶ 25} Birj andi worked as an engineer for AFIT after completing ten years of education during the parties' marriage. Major John Bell, who apparently worked with Birjandi at the AFIT,[2] testified that Birj andi's contract with AFIT would not have been renewed at the end of its term because she had performed poorly and because her dual citizenship in the United States and Iran prevented her from getting the necessary security clearances. Before the contract came to an end, however, Birjandi resigned, citing medical reasons.
 {¶ 26} Birjandi testified that she had been diagnosed with an ulcer that required surgery and interfered with her ability to walk or stand for extended periods. She also stated that she had suffered from depression which was being treated with medication. Due to her failure to comply with pretrial discovery orders, however, Birjandi was unable to substantiate her claim that she had quit her job on her doctor's recommendation, and her statement to that effect was stricken on hearsay grounds. She did not present any evidence about her prospects for getting a job using her engineering skills at a non-military facility or about how long or extensively she expected her medical condition to affect her ability to work.
 {¶ 27} Mir testified that he had worked as an irrigation engineer in Iran, but that his poor command of English had been an obstacle to his employment when he moved to the United States. He admitted that he had made approximately $40,000 some years as a taxi driver, but he testified that, since moving to Baltimore, he was earning about $700 every two weeks, or about $18,200 per year. Mir testified that he takes medication for high blood pressure and suffers from allergies. *Page 9 
 {¶ 28} The trial court did not elaborate on its reasons for awarding spousal support except to conclude that Mir's income was $18,200 and Birjandi's income was $118,000 to $120,000 per year. The trial court apparently did not credit Birjandi's testimony that her medical conditions prevented her from working. Although there was evidence that Mir had earned more money in previous years as a taxi driver than he was earning as a pizza deliveryman at the time of trial, the court could have reasonably concluded, based on his move to a new city, that Mir was not capable of earning substantially more income. The court also could have reasonably concluded that Birjandi was capable of finding another engineering position earning approximately what she had earned at AFIT in the absence of evidence to the contrary. Moreover, we find it significant that the trial court retained jurisdiction over the issue of spousal support, so that spousal support can be modified in the future if there are substantial changes in the parties' incomes or earning capacities. Thus, the trial court's spousal support award did not constitute an abuse of discretion.
 {¶ 29} The third assignment of error is overruled.
 {¶ 30} IV. "THE TRIAL COURT ERRED IN DIVIDING MARITAL PROPERTY"
 {¶ 31} Birjandi contends that the trial court's division of property was based upon a "snapshot" of the parties' assets rather than an accurate picture and that the court charged her for all of her withdrawals from accounts containing marital assets but did not account for any of her deposits. She claims that the marital assets held in financial accounts amounted to approximately $245,000. The trial court found that these funds exceeded $700,000.
 {¶ 32} According to Mir's testimony, Birjandi routinely held marital assets, including her income, in accounts that were in her name only. He presented bank records showing *Page 10 
substantial transfers of funds out of these accounts, many of which occurred in August and September 2004, around the time the complaint for divorce was filed. While it is true that there were also deposits made to these accounts, there is no documentary evidence that the deposits came from non-marital funds over which Birjandi was entitled to exercise exclusive control. The court concluded that Birjandi had engaged in "financial misconduct" and that Mir was entitled to half of the money that had been in these accounts.
 {¶ 33} The trial court found that the funds on deposit at the time of the hearing amounted to $228,930.19. Birjandi does not dispute this amount, but she does dispute the trial court's conclusion that she had withdrawn an additional $490,500.53 without accounting for its disposition. Our review of the bank records finds support for some of Birjandi's concerns.
 {¶ 34} The trial court concluded that Birjandi had made the following withdrawals without accounting for the funds:

Liberty Bank, September 14, 2004 $ 226,098.94
Sky Bank, September 13, 2004 142,478.94
Sky Bank, September 8, 2004 7,000.00
Cornerstone Bank, August 18, 2004 2,500.00
Cornerstone Bank, August 27, 2004 112,492.65

The court concluded that the sum, $490,570.53, reflected Birjandi's withdrawals from the marital accounts in August and September 2004. The court then added the funds on hand, $228,930.19, and Birjandi's withdrawals to arrive at $719,500.72 as the total amount of marital assets that had been held in the parties' financial accounts. The court further found that the funds should have been divided equally, giving each party $359,750.36. The court then ordered *Page 11 
that, because Birjandi had already withdrawn $490,570.53 from the marital accounts, she should pay $130,820.17 to Mir.
 {¶ 35} Birjandi claims that, because she transferred funds among these accounts during the period in question, some of the assets were counted twice in the court's calculation. Based on our review of the bank records, we agree. For example, on September 13, 2004, Birjandi withdrew $142,478.94 from a Sky Bank account, and she deposited that amount at Liberty Savings Bank the same day. She also withdrew $142,478.94 from Liberty Savings Bank on September 13, 2004. In its calculations, the court included a $226,098.94 withdrawal from Liberty Savings Bank and a $142,478.94 withdrawal from Sky Bank. In fact, the $226,098.94 withdrawal did not represent one particular withdrawal, but the total of all withdrawals from Liberty Savings between August 13 and September 14, 2004, including the $142,478.94. Thus, the same money was included twice, distorting the total amount of marital assets.
 {¶ 36} The $226,098.94 in total withdrawals from Liberty Bank also included $55,000 that was withdrawn on August 30, 2004. Birjandi points out in her brief that she deposited this $55,000 in a Sky Bank account the same day, and Sky Bank's records support this claim. It appears that this $55,000 may have been subsequently withdrawn from Sky Bank as part of the $142,478.94 withdrawal that the court noted on September 13, 2004. Thus, it appears that the trial court may have also counted these funds more than once in determining the total marital assets.
 {¶ 37} We acknowledge Mir's argument that Birj andi did not testify at trial about these funds or expressly trace them from one account to another, and we agree with Mir that Birjandi is not permitted to introduce new evidence on appeal. However, the documents presented at *Page 12 
trial suggest that funds were transferred from one account to another and demonstrate transfers and deposits of identical amounts among the accounts. Even without additional testimony about these funds, it is our view that the trial court erred in not considering the possibility that some of these funds were being counted more than once when the withdrawals were tallied.
 {¶ 38} Birj andi also challenges the trial court's treatment of her retirement accounts. In particular, she claims that the court awarded the accounts to Mir in full without correctly assessing their value. She claims that the Federal Thrift Savings Plan ("FTSP") account, which the court valued at $4,056.34, was actually worth approximately $29,000. The court apparently determined its value from Birj andi `s earning statement, which indicated that her deferred wages were $4,056.34 for the year to date. However, Birjandi did not offer any evidence at trial in support of her claim that the account was worth $29,000. As such, we cannot conclude that the trial court erred in valuing the account as it did.
 {¶ 39} Birj andi also contends that the trial court erred in holding her responsible for the entire tax liability for retirement accounts that she liquidated. The trial court noted that "[n]either the Plaintiff nor the Defendant offered any explanation or evidence of the tax consequences associated with the stock sale or the dissipation of the Defendant's 401(k) plan." The court held Birjandi responsible for any tax consequences because Mir did not have prior knowledge of the withdrawals and had not received any of the assets. On the evidence presented, we cannot conclude that the trial court abused its discretion in holding Birjandi responsible for the tax consequences of the liquidation of the retirement accounts.
 {¶ 40} Finally, Birjandi claims that the court abused its discretion in ordering her to return the $17,000 mahr that Mir paid to her in order to obtain his release from Iran. In Iran, *Page 13 
mahr is money paid to the bride by the groom or his family for the financial protection of the bride in the case of divorce. Mir had traveled to Iran after the parties separated and was allegedly detained there due to the divorce proceedings that Birjandi had initiated in Iran. Mir testified that he was not allowed to leave the county unless he paid mahr to Birjandi, which he managed to do using his credit cards. In our view, the trial court did not abuse its discretion in crediting Mir for this payment as part of the division of assets.
 {¶ 41} The fourth assignment of error is sustained in part and overruled in part.
 {¶ 42} V. "THE TRIAL COURT ERRED IN NOT AWARDING APPELLANT HER SEPARATE PROPERTY."
 {¶ 43} Birj andi argues that the trial court erred in finding that she did not have separate property through gifts and inheritances from her family. She claimed that she had been given $65,000 by her father, as well as an interest in an apartment that she sold to her siblings for $56,000. The court found that Birjandi's claim of separate property was not credible and that, in any event, any funds that she had received from her family were "commingled throughout the marriage and no longer traceable."
 {¶ 44} In her brief, Birjandi relies on an alleged deed, Exhibit 6, which was proffered but was not admitted by the trial court because it had not been produced in discovery. The trial court acted within its discretion in excluding this document because it had not been provided to Mir before trial. Moreover, this document is in Arabic, and no translation was provided. It also was not authenticated, although Birjandi claims both that it was self-authenticating as a foreign public document and that she could authenticate it because she knew her father's handwriting and of the gift he had made to her. She claimed to have receipts for the $65,000 she received *Page 14 
from her father, but these receipts were not admitted or proffered.
 {¶ 45} In addition to the absence of evidence that Birjandi had received assets from her family, she admitted at trial that the alleged funds had been deposited into marital accounts. She made no argument that these funds could be differentiated from other marital funds.
 {¶ 46} The trial court reasonably concluded that Birjandi had failed to substantiate the existence of gifts from her family, that her testimony about them was not credible, and that, even if such gifts had been received, it would be impossible to distinguish them from other marital assets. For all of these reasons, the trial court did not abuse its discretion in finding that there was no separate property to take into account in the division of assets. The fifth assignment of error is overruled.
 {¶ 47} VI. "THE TRIAL COURT ERRED IN ITS RULING REGARDING ATTORNEY FEES"
 {¶ 48} Birj andi claims that the trial court failed to take into account her ability to pay for Mir's attorney fees or Mir's ability to litigate the case using his own resources when it awarded attorney fees. She also disputes the amount that was awarded, claiming that appraisal fees, bank fees, and others were included in addition to the actual attorney fees. The court awarded the entire amount of attorney fees that Mir requested as spousal support pursuant to R.C. 3105.73. This amount, $15,873.05, did include some fees payable to banks to obtain records and $250 for an appraisal. Mir claims that all of the fees were properly awarded because many of them were "a direct consequence of [Birjandi's] failure to comply with the Court orders and misconduct."
 {¶ 49} The trial court expressed its reasons for awarding attorney fees and costs as *Page 15 
follows:
 {¶ 50} "The Court considers that all of the marital assets are in [Birjandi's] name. It considered [Mir] was forced to live on credit cards, low wage employment, and charity during the pendency of the action. It has also considered that [Mir] was required to charge an additional $17,000 to credit cards to obtain his release from Iran, after [Birjandi] filed her Complaint for Mahr in that nation. It considers that [Birjandi] lied about receiving the money and then later admitted she did receive it. * * * The Court further finds this was a complex case to litigate due to the discovery needed to verify marital assets and the many delays, including an appeal, caused by [Birjandi's] dismissal of numerous attorneys, and her use of other tactics, which resulted in stalling the case."
 {¶ 51} The trial court concluded that Birjandi's misconduct and refusal to abide by the court's orders significantly inflated Mir's legal expenses. Based on this evidence and testimony about the reasonableness of the attorney's hourly rate, the court concluded that the award of attorney fees was reasonable. We find no abuse of discretion.
 {¶ 52} R.C. 3105.73 permits a court to award "litigation expenses" as well as reasonable attorney fees if the court finds the award to be equitable. Most of the fees to which Birjandi objects are properly classified as litigation expenses, and the trial court did not err in including these in its award. Under these circumstances, the trial court's award of litigation fees was reasonable.
 {¶ 53} With respect to the appraisal fee, however, we note that in the parties' agreed entry of January 5, 2006, they agreed that their marital residence at 1458 Eileen Drive in Beavercreek "shall be appraised by Liming Associates with the parties equally sharing the *Page 16 
cost associated with said appraisal." In light of this agreement, the trial court did err in ordering Birjandi to reimburse Mir for half of the appraisal fee.
 {¶ 54} The sixth assignment of error is sustained in part and overruled in part.
 {¶ 55} VII. "THE TRIAL COURT ERRED IN ITS RULING REGARDING TAXES OWED."
 {¶ 56} Birjandi contests the trial court's conclusion that she should be responsible for the parties' tax liability in 2004, the year they separated. She points out that both parties worked that year and that they lived together most of the year. She asserts that the tax liability should have been treated as a shared marital debt.
 {¶ 57} After mentioning Mir's lack of knowledge of Birjandi's liquidation of her 401(k) plan and stock sales, the trial court reasoned:
 {¶ 58} "* * * [Birjandi] will be solely responsible for any tax liability associated with the liquidation of the marital assets. Further, other than [Birjandi's] testimony, submitted without any documentation or collaborating testimony, that $30,000 of the funds was used to pay for their adult daughter's law school tuition, [Birjandi] has offered no viable explanation where the $490,570.53 in withdrawn funds in addition to the liquidated investment accounts are currently at. [Mir] has not profited from the assets nor did he have any knowledge of the withdrawal of the funds until the divorce action commenced and the evidence was subpoenaed through his attorney's office.
 {¶ 59} "The court finds [Mir] may qualify as an innocent spouse under26 U.S.C.A. § 6013(e). The parties were living apart when the 401(k) plan was emptied and the stocks were redeemed; [Mir] had no knowledge of [Birjandi's] substantial understatement of tax *Page 17 
consequences attributable to her actions. [Mir] did not know the extent of [Birjandi's] investments, or what happened to them until after the divorce action was filed. Further [Mir] earned less than $20,000 on 2004 while [Birjandi] earned over $100,000. Any tax liability for 2004 will be paid by [Birjandi] alone and she will hold [Mir] harmless."
 {¶ 60} Although we have questioned the trial court's conclusion that $490,570.53 was withdrawn from marital accounts, as discussed under the fourth assignment of error, we find no fault with the trial court's basic premise that substantial amounts of money were spirited from these accounts without Mir's knowledge or consent around the time the complaint was filed. Birjandi has not accounted for these funds. Moreover, the court reasonably concluded that Birjandi should be wholly responsible for the tax consequences of her liquidation of the 401(k) account, especially since she did not offer any legitimate, credible explanation for her actions. Considering these actions, as well as the disparity in the parties' income, we conclude that the trial court did not err in ordering Birjandi to pay the entire tax liability for 2004.
 {¶ 61} The seventh assignment of error is overruled.
 {¶ 62} VIII. "THE TRIAL COURT ERRED BY EXCLUDING APPELLANT'S EXHIBITS, BY DENYING APPELLANT'S REQUEST FOR A CONTINUANCE, AND BY ALLOCATING AN INEQUITABLE PORTION OF THE TIME AT TRIAL TO APPELLANT"
 {¶ 63} Birjandi claims that Mir "was allotted the vast majority of the time for his portion of the case, was allowed time to consult with his attorney, and was allowed to introduce all of his exhibits." She also asserts that she was unfairly denied a continuance shortly before trial. Based on these assertions, she contends that she was prejudiced by the trial court's *Page 18 
handling of the case.
 {¶ 64} The denial of the continuance to which Birjandi seems to object occurred ten days before trial. The case had been pending for well over a year at that time. Birjandi requested that the trial be delayed because she had hired a new attorney. Birjandi had changed attorneys several times. The trial court did not abuse its discretion or give Mir an unfair advantage by denying this request.
 {¶ 65} Birjandi also claims that the trial court "denied her right to introduce exhibits" even though it acknowledged the complexity of the case. The trial court excluded the exhibits in question because Birj andi had not provided them to Mir before trial, as she had been ordered to do on more than one occasion. Birjandi apparently believes that Mir suffered no prejudice because she offered him the documents the morning of trial and, considering that the hearing continued on a date two weeks later, he had ample time to review those records.
 {¶ 66} The trial court acted within its discretion in excluding Birjandi's documents after her refusal to comply with the discovery deadlines. She offered no explanation for her refusal to provide the documents in a timely manner. Under these circumstances, Birjandi was not entitled to the benefit of her exhibits, and the trial court did not "choose injustice" by excluding them.
 {¶ 67} Birjandi further asserts that the trial court "erroneously allocated the vast majority of the trial time" to Mir. This assertion simply is not supported by the record. Both parties were given a full opportunity to present their cases.
 {¶ 68} The eighth assignment of error is overruled.
 {¶ 69} IX. "THE TRIAL COURT ERRED BY FINDING APPELLANT IN *Page 19 
CONTEMPT FOR FAILURE TO PAY SPOUSAL SUPPORT."
 {¶ 70} Birjandi claims that the finding of contempt in May 2006 for failure to pay spousal support in January and February 2006 was improper. She notes that the last motion for contempt was filed on October 6, 2005, and that the matter was resolved in December 2005. Because no additional motions were filed, she concludes that the court erred in finding her in contempt for January and February. Mir responds that, through an agreed entry filed in early January 2006, the parties agreed to have this issue considered at the final hearing.
 {¶ 71} The agreed entry was filed on January 5, 2006, and was addressed to numerous motions by the parties, including Mir's amended motion to show cause for contempt and Birjandi's pro se motion to "reconsider the reversal of temporary spousal support." The latter order apparently sought the removal of restraining orders related to the parties' accounts and an end to garnishment of Birjandi's wages. In the agreed order, the parties agreed that Birjandi would pay $3,850 to bring her spousal support current through December 31, 2005, and to cover attorney fees that she had been previously ordered to pay. The parties also agreed that "[a]ll issues in connection with [Birjandi's] Contra Motion to Dismiss and Motion to Reconsider the Reversal of Temporary Spousal Support Order shall be preserved and addressed by the Court at the final hearing * * *."
 {¶ 72} On May 8, 2006, the trial court filed an entry ruling on the October motion for contempt. In its decision, the trial court interpreted the agreed entry to defer "the issue of the temporary orders" until the final hearing. The court found Birjandi in contempt for failure to pay spousal support for January or February 2006 and ordered her to serve 30 days in jail unless she paid the arrearage within 30 days. *Page 20 
 {¶ 73} In essence, Birj andi argues that the motion for contempt was no longer before the court in May 2006 because the parties' agreed entry had disposed of the motion that was pending at that time, and no subsequent motion was filed. We agree with Birj andi that the agreed entry resolved the pending motion for contempt because the payments agreed upon therein brought her current on her spousal support obligations. Thus, the motion for contempt was no longer before the court in May 2006. If Birjandi failed to satisfy her support obligations during 2006, Mir was required to file another motion for contempt or to ask the court to address the arrearage in its judgment entry.
 {¶ 74} The ninth assignment of error is sustained.
 {¶ 75} The judgment of the trial court will be reversed with respect to the property division and the finding of contempt. In all other respects, the judgment will be affirmed. The matter will be remanded for further proceedings consistent with this opinion.
FAIN, J. and DONOVAN, J., concur.
[1] See King v. Kenny (1829), 4 Ohio 79, 83 (when instruments have been properly presented to the recorder's officer for record but were not recorded due to ministerial nonfeasance, the instrument is treated as though it had been recorded at the time it was properly presented);King v. Penn (1885), 43 Ohio St. 57, 1 N.E. 84 (holding that when the appellant had timely delivered his appeal to the court but the clerk had failed to formally file and indorse it, the appeal was "filed" when it was delivered to the court clerk). See, also, Young v. State PersonnelDept. Bd. of Review (1967), 9 Ohio App.2d 25, 38 O.O.2d 36,222 N.E.2d 789 (applying a presumption of timely delivery and deeming the notice of appeal timely when it was untimely file-stamped after the notice was found "under some books"); Gilbert v. Fifth Third Bancorp,159 Ohio App.3d 56, 61, 2004-Ohio-5829, 823 N.E.2d 11; Bach v. Crawford, Montgomery App. No. 19531, 2003-Ohio-1255, at ¶ 12 (finding substantial compliance with the civil rules where objections had been delivered to the court and forwarded to opposing counsel in a timely manner, but were file-stamped by the clerk several days later); Rhoades v. Harris (1999),135 Ohio App.3d 555, 735 N.E.2d 6 (holding that the file-stamped date on each document is presumed to reflect the actual date of filing, but that presumption can be refuted by evidence showing that the clerk received the document on a different date.)
[2] The beginning of Major Bell's testimony was not transcribed. *Page 1